UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 04-201-DLB

ANGIE L. BOWMAN                                                          PLAINTIFF


VS.                    **MEMORANDUM OPINION & ORDER**


BUILDER'S CABINET SUPPLY CO.                                    DEFENDANT


********************

Plaintiff brought this action against Defendant, her former employer, for unpaid wages and overtime compensation and unlawful wage withholding, in violation of the Fair Labor Standards Act (FLSA) and Kentucky's wage and hour statute.  Jurisdiction is proper under 28 U.S.C. §§ 1331, 1367.

This matter is presently before the Court upon the parties' cross motions for summary judgment (Docs. #22, 23).  Both parties filed responses (Docs. #24, 25), and Defendant filed a timely reply (Doc. #26).[1]  The motions are, therefore, ripe for review.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Angie Lynn Bowman is a certified kitchen designer.  She began working for Defendant Builder's Cabinet Supply Company ("BCS") in March 2003 after its President, Robert Porter, personally recruited her.  It is undisputed that Plaintiff was employed by Defendant as a professional kitchen and bath designer and sales representative from

---

[1]Plaintiff filed a Motion for Leave to file her reply out of time on March 21, 2006 (Doc. #27). Defendant filed a memorandum in opposition (Doc. #28), and on June 1, 2006, Magistrate Judge Patterson denied Plaintiff's motion (Doc. #29).

March 2003 until January 19, 2004.  The precise nature of her duties, however, is disputed. According to Defendant, "Plaintiff understood that her job responsibilities would include independent and creative kitchen and bath design as well as soliciting new business for BCS."  (Doc. #22. p.5).  Plaintiff, on the other hand, alleges that "her primary duty was to staff and maintain [Defendant's] showroom" and "to sell kitchen cabinets."  (Doc. #23, p.2).

In return, Plaintiff was paid a non-recourse "draw" or "advance" during the first 90 days of her employment.  Her annual draw was $42,000, which yielded a biweekly wage of $1,615.38.[2]  During this 3-month grace period, Plaintiff's draw was "non-recourse," meaning that she received it regardless of the amount of sales commission she earned. Once the grace period ended, however, her draw was against any commission.  In other words, if Plaintiff's monthly sales were below her goal of $42,000, she would receive her draw, but would become indebted to Defendant for any deficiency.  Conversely, if her monthly sales exceeded her goal, she would be paid a predetermined commission in addition to her draw.[3]

Due to poor sales, Plaintiff's annual draw was reduced to $25,000 and her biweekly wage was reduced to $961.53, in August 2003.  Plaintiff alleges that she did not receive any pay during the month of August; though she received her reduced draw from September to December 12, 2003, which was the date of her last advance.  On December 26, 2003, Plaintiff met with Mr. Porter, who informed her that due to her poor sales, she

---

[2]To support an annual draw of $42,000 per year, Plaintiff was expected to generate monthly sales of $42,000.  (Porter affidavit).

[3]Plaintiff received a 25% commission on sales to builders, remodelers, and retail customers; and a 12.5% commission on sales to dealers.  (Doc. #22, p.15).

2

would no longer be receiving a draw.  At that time, Plaintiff was approximately $7,000 in debt to Defendant.[4]  She continued to work for Defendant, closing any open sales she had, until January 19, 2004.

In her seven-count complaint,[5] Plaintiff claims first that she regularly worked in excess of 40 hours per week and is entitled to overtime compensation under federal and state law; second, that Defendant failed to pay her minimum, much less any, wage from December 12, 2003 to January 19, 2004, in violation of federal and state law; and third, that Defendant made unauthorized deductions from her earnings.  (Doc. #1).  She seeks compensatory, liquidated, and punitive damages, as well as costs and attorneys fees.

In its motion for summary judgment, Defendant argues that Plaintiff's unpaid wage and overtime claims must fail for two reasons: (1) she was an "employee employed in a bona fide professional capacity" under 29 U.S.C. § 213(a)(1) and was, therefore, not entitled to the benefits and protections of the FLSA; and (2) it qualifies for the "retail or service establishment" exemption under 29 U.S.C. § 207(i).  According to Defendant, the "bona fide professional employee" exemption applies with equal force to defeat Plaintiff's state law claims.  Defendant also contends that Plaintiff's state law claims are precluded because she failed to exhaust her administrative remedies by submitting her dispute to the Secretary of Labor Cabinet.  Finally, Defendant argues that: 1) Plaintiff has failed to present evidence to support her claims of unlawful wage withholding, 2) she is not entitled to any

---

[4]Defendant has counterclaimed for unearned advances in the amount of approximately $8,000.  (Doc. #2, p.4).

[5]Due to an error in numbering, Plaintiff's complaint lists only 6 counts.  There are, however, 7 substantive counts.

wages for her work between December 12, 2003 and January 19, 2004 because she was "in the hole" with regard to her draws and commission, and 3) neither the FLSA nor Kentucky wage and hour statute provides for punitive damages.

In response (and in her own motion for summary judgment), Plaintiff claims that Defendant has not sustained its burden of proving that either of the above-mentioned exemptions apply in this case.   Specifically, she alleges that her "design work was incidental to her primary duty of selling [cabinets]" (Doc. #23, p.12), and that Defendant's "draw against commission" compensation scheme does not constitute a "salary."  She also alleges that Defendant has failed to satisfy each element of the "retail or service establishment" exemption.   Plaintiff cites to the Supreme Court of Kentucky's recent decision in *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky. 2005), for the proposition that she was not required to exhaust her administrative remedies before litigating her state law claims.  With respect to her claim for unpaid overtime, Plaintiff concedes that she cannot state with certainty the number of hours she worked, but argues that it was incumbent upon Defendant to maintain accurate employee time records.  She also claims that she worked without pay during the month of August 2003, and from December 12, 2003 to January 19, 2004.   Finally, she challenges the viability of Defendant's counterclaim.[6]

## II.  ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to

---

[6]As noted by Defendant, Plaintiff never filed an answer to Defendant's counterclaim.

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

## B.  Discussion

The Fair Labor Standards Act (FLSA) generally requires covered employers to pay employees at least the federal minimum wage for all hours worked, as well as overtime pay of time-and-one-half the regular rate of pay for all hours worked over 40 in a single workweek. *See* 29 U.S.C. §§ 206, 207. The Act also includes a number of exemptions from the minimum wage and overtime requirements. For example, section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for "any employee employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of outside salesman ...." 29 U.S.C. 213(a)(1). Although Congress has never defined the terms "executive," "administrative," "professional," or "outside salesman," the Department of Labor (pursuant to Congress' specific grant of rule-making authority) has issued implementing regulations, found at 29 C.F.R. part 541, defining the scope of the section 13(a)(1) exemptions. Those regulations generally require each of three tests to be

met for the exemption to apply: (1) the employee must be paid a predetermined and fixed salary that is not subject to reductions because of variations in the quality or quantity of work performed (the "salary basis test"); (2) the amount of salary paid must meet minimum specified amounts (the "salary level test"); and (3) the employee's job duties must primarily involve executive, administrative or professional duties as defined by the regulations (the "duties test"). *See Acs v. Detroit Edison Co.*, 444 F.3d 763, 2006 WL 954180, at *3 (6th Cir. Apr. 14, 2006) citing *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir. 2001).

The Department of Labor revised the FLSA's implementing regulations governing this exemption, effective August 23, 2004.  *See* 29 C.F.R., pt. 541.  Plaintiff argues that because her employment with Defendant ended on January 19, 2004, the Court should apply the prior regulations and interpretations.   Defendant, on the other hand, argues that the date Plaintiff filed suit controls.  The Court agrees with Defendant.  S*ee Ramos v. Lee County School Bd.*, No. 2:04CV308FTM-33SPC, 2005 WL 2405832, at *2, n.4 (M.D. Fla. Sept. 29, 2005) (noting that the time the complaint is determinative).  Therefore, because Plaintiff filed her complaint on September 24, 2004, the revised regulations govern the Court's analysis.

**1.     Bona fide professional employee exemption**

As noted above, the FLSA expressly exempts employees employed in a "bona fide professional capacity" from its benefits and protections.  29 U.S.C. § 213(a)(1).  The regulations explain that the term "employee employed in a bona fide professional capacity" means any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging, or other facilities;

6

and
(2) Whose primary duty is the performance of work:
(i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
(ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300.[7]  The regulations create a distinction between "learned professionals" and "creative professionals," noting that "[t]o qualify for the creative professional exemption, an employee's primary duty must be the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.302(a). A "recognized field of artistic or creative endeavor" includes such fields as music, writing, acting, and the graphic arts.  *Id.* § 541.302(b).

Like most exemptions under the FLSA, the "professional employee" exemption is "narrowly construed against the employers seeking to assert [it]," and the employer bears the burden of proving that an employee satisfies all the requirements.  *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997).  The determination of whether a plaintiff is a professional is "intensely fact bound and case specific."  *See Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 740-41 (6th Cir. 2000) citing *Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1461 (10th Cir. 1996).

According to Defendant, Plaintiff meets the foregoing criteria for a bona fide

---

[7]The regulations state that "[a]n employee will be considered to be paid on a 'salary basis' ... if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed ...."  29 C.F.R. § 541.602(a).

professional employee.  First, Defendant argues that Plaintiff was paid on a "salary basis," because she received an annual draw that, even when reduced, yielded a biweekly wage in excess of the minimum requirement under the regulations (i.e., $455/week).  Defendant also alleges that "Plaintiff received these payments regardless of the hours worked."  (Doc. #22, p.10).  As further evidence that its "draw on commission" pay arrangement meets the regulatory definition of a "salary," Defendant relies on *Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480 (D. Md. 1982).   In that case, much like this one, the subject employee's pay was calculated on a draw against commission basis.  *Id*. at 484.  For example, he received a $500 commission on each sale, and a $100 commission for every 10 lease option contracts he secured.  *Id*.  Commissions earned were then credited toward a monthly draw of $500, paid $250 semimonthly, which he received regardless of whether he had made any sales for the month.  *Id*.  The court concluded that this arrangement satisfied the "salary basis test."

Plaintiff attempts to distinguish *Donovan* with proof that she did not receive any compensation during the months of August and December 2003.  Defendant, however, points to Plaintiff's earning records, which indicate that she took unpaid vacation in early August, and she received two checks on September 5, 2003, one of which represented her pay for the last two weeks in August.  (Doc. #23, exhibit 2).  Notably, Defendant does not dispute that Plaintiff received no form of compensation after December 12, 2003.

Under these circumstances, the Court finds first that Defendant has not demonstrated that Plaintiff was compensated on a "salary basis" for any work she performed after December 12, 2003.  The Court also finds that Defendant's "draw against commission" payment scheme differs from that in *Donovan* in two material respects.  First,

8

in *Donovan*, the employee received his monthly draw regardless of whether he made any sales.  In this case, Plaintiff received her draw, but became indebted to Defendant if her monthly sales were less than projected.  More importantly, after her "grace period" ended, Plaintiff's draw was tied directly to the amount of sales she made; and due to her poor sales, it was reduced and ultimately eliminated. Therefore, despite Defendant's arguments, Plaintiff's pay was performance-based and, therefore, does not satisfy the requirements of 29 C.F.R. § 541.602(a).  For these reasons, Defendant has failed to prove that the "salary basis test" is satisfied.

Similarly, Defendant has failed to prove that the "duties test" is satisfied.  Like many employees, Plaintiff's job at BCS was multifaceted.  The parties agree that, generally, her job responsibilities were two-fold: 1) she was a professional kitchen and bath designer, and 2) she was a sales associate.  They disagree, however, on which responsibilities were "primary."  Defendant focuses on the design aspect of Plaintiff's work; while Plaintiff emphasizes the sales aspect of her work.  For example, Defendant claims that Plaintiff would meet with clients and determine what their needs were.  She would then create detailed drawings/sketches with elevations and perspectives, either freehand or using a computer program called "20/20."  Defendant claims that Plaintiff had complete creative discretion and decision-making authority throughout this process.  Finally, Defendant notes that Plaintiff is a certified kitchen designer,[8] and, as such, she attends annual continuing education courses.

---

[8]Plaintiff is certified by the National Kitchen and Bath Association.  She has been so certified for 12 years.

9

Plaintiff, on the other hand, contends that her primary duty was selling cabinets; specifically, "stock" cabinets that offered her little flexibility in terms of design. She also argues that "her primary duty was to staff and maintain the showroom." (Doc. #23, p.2). She admits that she did "design work, measuring appointments, and pricing *after hours*" and on Saturdays. (Doc. #23, p.3) (emphasis added). Finally, Plaintiff argues that her certification as a kitchen designer in no way qualified her to sell cabinets. (Doc. #23, p.12).

Although the amount of time an employee spends in the performance of particular tasks is a useful guide to determining that employee's primary duty, "courts evaluate whether an employee's responsibilities constitute h[er] primary duty based on the importance of the duties, the frequency with which they require the employee to exercise discretion, and the relative freedom of the employee from supervision, as well as the percentage of time the employee spends performing them." *Rutlin*, 220 F.3d at 742 (*quoting Piscione v. Ernst & Young*, 171 F.3d 527, 545 (7th Cir. 1999)). In this case, genuine issues of material fact preclude a finding that Plaintiff's primary duty involved work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor. Accordingly, at this stage of the proceedings, Defendant has failed to demonstrate that Plaintiff was exempt from the FLSA's requirements as a "bona fide professional employee," and its motion for summary judgment on that basis is **denied**.

## 2.   Retail or service establishment exemption

Alternatively, Defendant claims that it is entitled to summary judgment because the "retail or service establishment" exemption to the FLSA's overtime requirement applies.[9]

---

[9]In her motion for summary judgment, Plaintiff makes much of the fact that Defendant did not affirmatively plead this exemption in its answer. Defendant claims that the fact that it was raised

*See* 29 U.S.C. § 207(i).  As the name suggests, in order to qualify for the retail-service

exemption, the employee must be an employee of a retail or service establishment.  The

regulations promulgated by the Secretary of Labor define a "retail or service establishment"

as "an establishment 75 per centum of whose annual dollar volume of sales of goods or

services (or of both) is not for resale and is recognized as retail sales or services in the

particular industry."  29 C.F.R. § 779.411.  For purposes of determining whether certain

goods or services are sold for "resale," the term "sale" means "any sale, exchange, contract

to sell, consignment for sale, shipment for sale, or other disposition."  29 C.F.R. § 779.331.

Pursuant to this definition, sales of goods or services for distribution by the purchaser for

business purposes are sales for resale under the "other disposition" language of the

definition of "sale," even if the goods or services are distributed by the purchaser at no cost

to the ultimate recipient.  *Id.*  In determining whether a particular business is a retail or

service establishment, the Court must consider not only these definitions, but also whether

the business possesses certain attributes that are generally associated with retail or service

establishment:

> Typically a retail or service establishment is one which sells goods or
> services to the general public.  It serves the everyday needs of the
> community in which it is located. The retail or service establishment performs
> a function in the business organization of the Nation which is at the very end
> of the stream of distribution, disposing in small quantities of the products and
> skills of such organization and does not take part in the manufacturing
> process.

*See* 29 C.F.R. § 779.318(a); *Viciedo v. New Horizons Computer Learning Center of*

*Columbus, Ltd.*, 246 F. Supp. 2d 886 (S.D. Ohio 2003).

---

in its motion for summary judgment provided Plaintiff sufficient notice.

Two additional requirements must be satisfied before the "retail or service establishment" exemption applies.  First, the employee's regular rate of pay must be more than one and one-half times the minimum wage rate.  The regulations promulgated by the Secretary of Labor explain that the employee's regular rate of pay is to be determined as follows:

> The meaning of the "regular rate" of pay under the Act is ... a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into a straight-time earnings for such hours to obtain the statutory regular rate ....  The employee's "regular rate" of pay must be computed ... on the basis of his hours of work in that particular workweek and the employee's compensation attributable to such hours. The hourly rate thus obtained must be compared with the applicable minimum rate of pay of the particular employee under the provisions of section 6 of the Act.

29 C.F.R. § 779.419(b).  Second, more than half of the employee's compensation for a representative period must represent commissions on goods or services.  The regulations recognize that employees of retail or service establishments are usually compensated in any one of five ways:

> (1) Straight salary or hourly rate: Under this method of compensation the employee receives a stipulated sum paid weekly, biweekly, semimonthly, or monthly or a fixed amount for each hour of work.
> (2) Salary plus commission: Under this method of compensation the employee receives a commission on all sales in addition to a base salary (see paragraph (a)(1) of this section).
> (3) Quota bonus: This method of compensation is similar to paragraph (a)(2) of this section except that the commission payment is paid on sales over and above a predetermined sales quota.
> (4) Straight commission without advances: Under this method of compensation the employee is paid a flat percentage on each dollar of sales he makes.
> (5) Straight commission with "advances," "guarantees," or "draws." This method of compensation is similar to paragraph (a)(4) of this section except that the employee is paid a fixed weekly, biweekly, semimonthly, or monthly "advance," "guarantee," or "draw." At periodic intervals a settlement is made at which time the payments already made are supplemented by any

12

additional amount by which his commission earnings exceed the amounts previously paid.

29 C.F.R. § 779.413(a).  By definition, each of these compensation plans, except for the "straight salary or hourly rate," qualify as "bona fide commission plans" under § 207(i).

Defendant argues that all three criteria are met.  First, Defendant alleges that more than eighty-five percent of its sales "come from individuals who are remodeling their home[s] and builders who use the custom cabinetry in the homes they are building."  (Doc. #26, p.12).  According to Mr. Porter, the breakdown of sales is as follows:

> Approximately 45 percent of sales come from individuals who are remodeling their home[s].  In the industry, these ... are referred to as "remodeling" or "retail sales" ....  Approximately 40 percent of sales come from companies engaged in home building who are seeking custom kitchen or bathroom designs .... These builders special order custom kitchens or baths, or the individual purchaser of the home is given a cabinetry and/or bath allowance and seeks a custom design from [Defendant].  Builders are charged sales tax on all purchases and no resale certificate is issued ....

(Porter affidavit, Doc. #26, Exh. B).  Although not cited by either party, the Court notes that:

> Section 3(n) of the Act ... excludes from the category of sales for resale "the sale of goods to be used in residential or farm building construction, repair or maintenance: *Provided*, That the sale is recognized as a bona fide retail sale in the industry." Under this section a sale of building materials to a building contractor or a builder for use in residential or farm building, repair or maintenance is not a sale for resale, provided, the sale is otherwise recognized as a bona fide retail sale in the industry. If the sale is not so recognized it will be considered a sale for resale. Thus, only bona fide retail sales of building materials to a building contractor or a builder for the uses described would be taken out of the category of sales for resale ....

*See* 29 C.F.R. § 779.335.  Mr. Porter's affidavit establishes that any sales to individual customers qualify as "retail sales."  It does not, however, indicate that sales to builders are recognized as "bona fide retail sales" in the industry.

13

Defendant relies on the same evidence outlined above in support its contention that the other requirements of the "retail or service establishment" exemption are satisfied.  *See infra* pp. 8-10.  In particular, Defendant argues that, at all times, Plaintiff's rate of pay was more than one and one-half times the minimum wage rate.  Defendant also argues that its compensation arrangement with Plaintiff "meets the criteria of a bona fide commission plan because Plaintiff was paid a draw against commission."  (Doc. #22, p.15).  In support, Defendant relies on the following language found in the regulations:

> Thus an employee who is paid a guarantee or draw against commissions computed in accordance with a bona fide commission payment plan or formula under which the computed commissions vary in accordance with the employee's performance on the job will qualify for exemption provided the conditions of 7(i)(1) are met as explained in § 779.419.

29 C.F.R. § 779.416(b).  Defendant fails to recognize, however, that "[a] commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee).  *Id*. § 779.416(c).

According to Defendant, Plaintiff acknowledges that from June 2003 through December 2003, one hundred percent of her pay depended upon the commission she earned, which is more than the fifty percent threshold required for the exemption to apply.  Plaintiff, on the other hand, notes that she received no compensation during the months of August and December 2003, and January 2004.  She also argues that Defendant is seeking, by virtue of its counterclaim, to recoup what money it actually paid to her, which could affect whether her rate of pay was more than one and one-half times the minimum wage rate and, therefore, whether the exemption applies.  Finally, Plaintiff argues that

14

Defendant's compensation scheme cannot be described as a "bona fide commission plan" because it had an inherent pitfall (i.e., employees became indebted to Defendant if their monthly sales were insufficient to cover their draws).

Defendant's failure to pay Plaintiff for any work performed after December 12, 2003 precludes a finding that the final two elements of the "retail or service establishment" exemption are satisfied, at least with respect to the time between December 12, 2003 and January 19, 2004.    The more difficult inquiry is how to classify Defendant's pay plan.  As discussed above, the Court has concluded that Plaintiff was not paid on a "salary basis." Similarly, Defendant's "draw against commission" scheme does not fit any of the plans recognized by the DOL as "bona fide commission plans" for purposes of the "retail or service establishment" exemption.  As a result, Defendant's employees, and the Court, are left somewhere in the middle.[10]

---

[10]The court in *Viciedo v. New Horizons Computer Learning Center of Columbus, LTD*, 246 F. Supp. 2d 886 (S.D. Ohio 2003), faced the same dilemma.  In that case, the defendant-employer had two different methods of compensation for its account executives.   Under the "Level I" plan, account executives were paid a predetermined amount of money on a bi-weekly basis, known as a "non-recoverable draw."  *Id*. at 896.  They were also paid a five percent commission on sales. *Id*.  If an account executive collected less than $10,000, his/her non-recoverable draw was reduced by the amount of the five percent commission, so that the total compensation did not exceed the amount of the non-recoverable draw.  *Id*.  If, on the other hand, an account executive collected more than $10,000, then his/her five percent commission was added to the non-recoverable draw. *Id*.

In finding that the retail-service exemption did not apply, the court concluded that the Level I plan constituted a hybrid of a "quota bonus" plan and a "salary plus commission" plan.  *Id*. at 897. It was not a pure "quota bonus" plan because account executives were paid the full amount of their non-recoverable draw even if they did not bring in over $10,000 in sales.  *Viciedo*, 246 F. Supp. 2d at 897.  At the same time, it was not a pure "salary plus commission" plan because the base salary could be reduced if the executives did not generate enough sales.  *Id*. at 897-98.  Finally, the court concluded that the plan was not a "straight commission with draw" because the draw did not represent a portion of the commissions earned, but rather represented a flat compensation rate that was added to the amount of commissions earned.  *Id*. at 898.

The Court finds *Viciedo* instructive in concluding that neither the "bona fide professional

Under these circumstances, the Court concludes that the "retail or service establishment" exemption does not apply to the time period between December 12, 2003 and January 19, 2004. The Court also concludes that Defendant has failed to demonstrate that Plaintiff was compensated according to a "bona fide commission plan." Therefore, its motion for summary judgment on that basis is **denied**.

### 3.    Plaintiff's state law claims

Defendant moves for summary judgment on Plaintiff's state law claims on the basis that she failed to exhaust her administrative remedies. In response, Plaintiff argues that an employee asserting a claim under K.R.S. Chapter 337 is not required to exhaust her administrative remedies prior to filing suit. *See Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky. 2005). The Sixth Circuit recently confronted this precise issue in *Oaks v. 3M Company*, 453 F.3d 781 (6th Cir. 2006). In *Oaks*, the plaintiff brought claims for breach of contract and promissory estoppel, as well as a statutory claim for additional wages under Kentucky's wage and hour statute. The district court granted summary judgment to the defendant holding that, absent a contract, Plaintiff's statutory claims were required to be administratively exhausted and, therefore, the court lacked jurisdiction. The Sixth Circuit reversed, noting that *Parts Depot* resolved the issue of whether a trial court possesses "original subject matter jurisdiction over a wage and hour dispute between an employer and

―――――――――――――

employee" nor "retail or service establishment" exemption applies in this case.

16

employee," in the affirmative.  *Id*. at 783.[11]   In light of *Oaks*,  Defendant's motion for summary judgment as to Counts 3,4, and 6 of Plaintiff's complaint is **denied**.

Plaintiff's claim for unlawful wage withholding under K.R.S. §§ 337.060(1), 337.070 (Count 5) is a different matter.   In her response to Defendant's motion for summary judgment, Plaintiff alleges that "[she] never agreed in writing that she would permit all of her earnings to be deducted by the Defendants [sic] during the months of August and December of 2003 and January of 2004 ...." (Doc. #24, p.17).  The Kentucky Court of Appeals examined the parameters of K.R.S. § 337.060(1) in *Kimmel v. Progress Paint Mfg.*, No. 2002-CA-273-MR, 2003 WL 1226837, at *3 (Ky. Ct. App. Jan. 10, 2003).  In that case, the plaintiff was employed as a sales agent for the defendant and alleged, in part, that the defendant failed to pay him certain commissions upon sales.  *Id*. at *1.  The plaintiff worked on a straight commission, receiving an eight percent commission on sales that was paid on a monthly basis.  *Id*.  He argued that he was wrongfully denied commissions on "defective product credits" to two of his customers.  *Id*. at *2.  The defendant, by contrast, did not consider the credits a qualifying "sale."  *Id*.

On appeal, the plaintiff argued that the defendant's failure to pay the required commissions violated K.R.S. § 337.060(1).  Under that statute,

> *No employer shall withhold from any employee any part of the wage agreed upon.* This section shall not make it unlawful for an employer to withhold or divert any portion of an employee's wage when the employer is authorized to do so by local, state, or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital

---

[11]Defendant makes an unconvincing argument that *Parts Depot* "deals only with K.R.S. § 337.385, a statute under which Plaintiff does not make a claim." (Doc. #26, p. 14).  At the same time, Defendant acknowledges that Plaintiff's claims are for unpaid wages and overtime, which are expressly covered under K.R.S. § 337.385.

> and medical dues, or other deductions not amounting to a rebate or
> deduction from the standard wage arrived at by collective bargaining or
> pursuant to wage agreement or statute, nor shall it preclude deductions for
> union dues where such deductions are authorized by joint wage agreements
> or collective bargaining contracts negotiated between employers and
> employees or their representative.

K.R.S. § 337.060(1) (emphasis added).  The court concluded, however, that because the

agreed wage was in dispute, the statute was inapplicable.  *Kimmel*, 2003 WL 1226837, at

*3.  The court stated, "[s]imply put, we do not believe the legislature intended KRS 337.060

to apply where there exists a *bona fide* dispute concerning wages."  *Id*.

The same rationale applies in this case.  Plaintiff argues that Defendant unlawfully

withheld wages by discontinuing her draw; while Defendant argues that, due to her

increasing indebtedness, Plaintiff was no longer entitled to a draw.  Therefore, based upon

*Kimmel*, Defendant's Motion for Summary Judgment is **granted** as to Count 5 of Plaintiff's

complaint.

### 4.      Availability of punitive damages

Finally, Defendant moves for summary judgment on Count 7 of Plaintiff's complaint,

in which she seeks punitive damages.   In support, Defendant contends that punitive

damages are not available under the FLSA or Kentucky's wage and hour statute.  A review

of the FLSA's penalties section confirms Defendant's position.   That section states, in

pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of
> this title shall be liable to the employee or employees affected in the amount
> of their unpaid minimum wages, or their unpaid overtime compensation, as
> the case may be, and in an additional equal amount as liquidated damages.
> Any employer who violates the provisions of section 215(a)(3) of this title
> shall be liable for such legal or equitable relief as may be appropriate to
> effectuate the purposes of section 215(a)(3) of this title, including without

18

> limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages .... The court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action ....

29 U.S.C. § 216(b).  Similarly, the Kentucky statute states:

> Any employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS 337.020 to 337.285 shall be liable to such employee affected for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court. Provided, that if, in any action commenced to recover such unpaid wages or liquidated damages, the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of KRS 337.020 to 337.285, the court may, in its sound discretion, award no liquidated damages, or award any amount thereof not to exceed the amount specified in this section. Any agreement between such employee and the employer to work for less than the applicable wage rate shall be no defense to such action. Such action may be maintained in any court of competent jurisdiction by any one (1) or more employees for and in behalf of himself or themselves.

K.R.S. § 337.385(1).  Because Plaintiff's claims arise under sections 206 and 207 of the FLSA, her damages appear to be limited to compensatory and liquidated damages only. Based solely upon the language of the statutes, and absent any controlling case law authorizing an award of punitive damages, Defendant's Motion for Summary Judgment is **granted** as to Count 7 of Plaintiff's complaint.

19

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that:

(1)     Defendant's Motion for Summary Judgment (Doc. #22) be, and hereby is, **granted** as to Counts 5 and 7 of Plaintiff's complaint, **and denied** in all other respects;

(2)     Plaintiff's Motion for Summary Judgment (Doc. #23) be, and hereby is, **denied**; and

(3)     This matter is hereby set for a Status Conference on **September 7, 2006 at 9:30 a.m.**  The parties are advised that the Court will set pretrial and trial dates at the conference.

This 23rd day of August, 2006.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\Opinions\4-201-MOO.wpd

20